IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION

MATTHEW MORRIS                                                                                          PLAINTIFF

V.                                        Case No. 3:23-CV-00076-BBM

MARTIN J. O'MALLEY,[1] Commissioner,
SOCIAL SECURITY ADMINISTRATION                                              DEFENDANT

## ORDER

Plaintiff Matthew Morris applied for Title II and Title XVI disability benefits on May 10, 2021, alleging disability within the meaning of the Social Security Act ("Act") beginning on February 22, 2021. (Tr. at 10). His claim was denied initially and upon reconsideration. *Id*. Following a hearing, the Administrative Law Judge ("ALJ") denied Morris's application on December 23, 2022. (Tr. at 19). The Appeals Council thereafter denied his request for review. (Tr. at 1). The ALJ's decision now stands as the final decision of the Commissioner, and Morris has requested judicial review.

On appeal, Morris asserts four points of error, challenging his denial of disability benefits. As set forth fully below, the Court[2] finds that the Commissioner's decision is supported by substantial evidence on the record as a whole and affirms.

---

[1] On December 20, 2023, Martin J. O'Malley was sworn in as Commissioner of the Social Security Administration. Pursuant to Federal Rule of Civil Procedure 25(d), Commissioner O'Malley is automatically substituted as the Defendant.

[2] The parties have consented in writing to the jurisdiction of a United States Magistrate Judge. (Doc. 4).

I.     **THE ALJ'S DECISION**

At step one of the five-step sequential process,[3] the ALJ found that Morris had not engaged in substantial gainful activity since February 22, 2021. (Tr. at 12). The ALJ then identified chronic obstructive pulmonary disease ("COPD"), spinal compression fractures, obesity, and degenerative disc disease of the lumbar spine as severe impairments. *Id*. After finding at step three that none of the impairments, individually or combined, met or equaled a listed impairment, the ALJ determined that Morris had the residual functional capacity ("RFC") to perform work at the light exertional level with certain restrictions. (Tr. at 14–15). The ALJ found that Morris could stand and walk six hours in an eight-hour workday, he could sit six hours in an eight-hour workday, and he could lift and carry ten pounds frequently and twenty pounds occasionally. (Tr. at 15). The ALJ determined, however, that Morris could not constantly stoop, and he must avoid concentrated exposure to pulmonary irritants. *Id*.

At step four, the ALJ determined that Morris was able to perform his past relevant work as an eyeglass frame truer. (Tr. at 17). Relying upon vocational expert testimony, the ALJ found additionally that Morris could perform other jobs that existed in significant numbers in the national economy. (Tr. at 17–18). Consequently, the ALJ concluded that Morris was not disabled. (Tr. at 19).

---

[3] The ALJ must determine: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a), 416.920(a)(4).

## II.     DISCUSSION

### A.     Standard of Review

The Court's function on review is to determine whether the Commissioner's decision is "supported by substantial evidence on the record as a whole and whether it is based on legal error." *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); *see also* 42 U.S.C. § 405(g). While "substantial evidence" is that which a reasonable mind might accept as adequate to support a conclusion, "substantial evidence on the record as a whole" requires a court to engage in a more scrutinizing analysis:

> [O]ur review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision, we also take into account whatever in the record fairly detracts from that decision. Reversal is not warranted, however, merely because substantial evidence would have supported an opposite decision.

*Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001) (internal quotations and citations omitted).

In clarifying the "substantial evidence" standard applicable to review of administrative decisions, the Supreme Court has explained: "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence . . . 'is more than a mere scintilla.'" *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 217 (1938)). "It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id*.

**B.     Arguments on Appeal**

Morris argues four points for reversal of the ALJ's disability determination: (1) that the ALJ failed to adequately evaluate the persuasiveness of Dr. Kenneth Holder's medical opinion; (2) that the ALJ erred in not categorizing Morris's depression as a severe impairment; (3) that the evidence does not support the ALJ's RFC determination; and (4) that the ALJ failed to properly consider Morris's subjective complaints of pain. The Court will address each argument, in turn.

1.     <u>Medical Opinion of Dr. Kenneth Holder</u>

Morris contends that the ALJ committed legal error by: (1) not addressing both the "supportability" and "consistency" of Dr. Holder's opinion that Morris had significant limitations, and (2) failing to provide good reasons why Dr. Holder's opinion was unpersuasive. (Doc. 9 at 22–25). The Court disagrees.

The law requires that an ALJ not defer or give any specific evidentiary weight to a medical opinion, regardless of the source. 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Rather, the ALJ should determine the persuasiveness of each medical source or prior administrative medical finding based on the following factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) any other factor that tends to support or contradict a medical opinion. 20 C.F.R. §§ 404.1520c(a)–(c), 416.920c(a)–(c). The ALJ is required to explain the decision as to the two most important factors— supportability (through a discussion of the relevance of the objective medical evidence) and consistency (through a comparison of the medical opinion and evidence from other medical and nonmedical sources in the file). 20 C.F.R. §§ 404.1520c(b)(2),

416.920c(b)(2). The ALJ may, but is not required to, explain the consideration of the other factors. *Id*.

In this case, Dr. Holder conducted a physical examination of Morris on behalf of the Social Security Administration ("SSA") on January 13, 2022. (Tr. at 601). Morris self-reported hip and back pain with limited mobility, cramping in his core, loss of breath with physical labor, right-leg neuropathy, and major depression. *Id*. In notes, Dr. Holder indicated that Morris had sinus congestion, shortness of breath following mild exertion, and could walk about 100 feet. (Tr. at 601–602). The examination produced mostly normal results. Dr. Holder found that Morris had a slight reduction in range of motion in his cervical spine in both flexion and extension, a more significant reduction in flexion of his lumbar spine, an inability to rise from a squatting position, slow gait, and unsteady tandem walking. (Tr. at 601–604). Strength in Morris's extremities was normal. He did not limp, did not need an assistive device to stand or walk, could walk on his heels and toes, and had normal posture. (Tr. at 604).

Following the evaluation, Dr. Holder diagnosed Morris with COPD, mid-low back pain, and depression. (Tr. at 605). In assessing the severity of Morris's limitations, Dr. Holder noted moderate to severe limitations in walking, lifting, and carrying; moderate limitations in bending, stooping, squatting, lifting, carrying, and climbing; and moderate limitations in concentration and social interactions. *Id*.

Follow-up x-rays of Morris's lumbar spine showed stable compression fractures at T12, L1, and L2; moderate disc space narrowing; prominent osteophytes at L5-S1; and small anterior osteophytes at L4-L5. (Tr. at 26–27). It was noted that the "most severe"

deformity was at T12, "resulting in approximately 30% height loss." (Tr. at 26). Additional x-rays showed mild glenohumeral arthritis of the left shoulder, slight lateral joint space narrowing and interval patellofemoral osteophytosis of Morris's left knee, and severe joint space narrowing of the great left toe with mild arthritis of the MTP joint. (Tr. at 29–34).

The ALJ found Dr. Holder's opinion unpersuasive and "not supported by any other evidence." (Tr. at 16). The ALJ noted that Morris had normal physical examinations both before and after seeing Dr. Holder. *Id*. Morris had not complained of arthralgias, back pain, neck pain, or gait problems at any of his most recent doctor visits. *Id*. While x-rays of Morris's spine showed degenerative changes in the lumbar spine and stable remote compression fractures, the ALJ found that "subsequent physical findings do not support the limitations outlined" by Dr. Holder. *Id*.

The ALJ pointed out that Morris's own testimony was that he could lift forty pounds; smokes two packs of cigarettes daily; and takes only over-the-counter pain relievers and medical marijuana to treat his pain. (Tr. at 16). Although Morris also maintained that he could only walk twenty feet, he described minimal problems attending to his personal care. He described problems bending over, but he could drive, shop in stores, do laundry, care for pets, go to flea markets and yard sales, and watch television or play video games daily. (Tr. at 276–283). Despite Morris's testimony that he could only sit for thirty minutes, he also stated that, after waking, he would "come downstairs to my chair and watch TV or play my switch until bedtime" and enjoyed sitting on the front porch. (Tr. at 277, 280).

The ALJ found the opinions from consulting medical professionals, none of which found Morris as limited as Dr. Holder, generally persuasive because they were supported by and consistent with evidence in the record. Dr. Ramona Bates, who found that Morris could perform light work and reviewed Dr. Holder's opinion, noted that "objective findings only partially consistent w/limitations given; appear heavily reliant on [Morris's] self-reported abilities." (Tr. at 64). Dr. James Hitchens stated that Dr. Holder's "opinion relies heavily on the subjective report of symptoms and limitations provided by [Morris], and the totality of the evidence does not support the opinion." (Tr. at 80). Dr. Hitchens found Morris capable of occasionally lifting or carrying up to twenty pounds, frequently lifting or carrying up to ten pounds, standing or walking up to six hours in an eight-hour workday, and sitting up to six hours in an eight-hour workday. (Tr. at 80–81). Additionally, Dr. Sarah Stephens and Dr. Kevin Santulli opined that Morris did not have significant limitations relating to mental impairment. (Tr. at 61, 79).

An ALJ may properly discount medical source statements containing limitations that "stand alone," do not exist in the physician's treating notes, and are not corroborated by objective medical testing. *See Anderson v. Astrue*, 696 F.3d 790, 794 (8th Cir. 2012) (citing *Hogan v. Apfel*, 696 F.3d 790, 794 (8th Cir. 2012)). An ALJ may give less weight to a physician's opinion based largely on subjective complaints. *Cline v. Colvin*, 771 F.3d 1098, 1104 (8th Cir. 2014) (citing *Kirby v. Astrue*, 500 F.3d 705, 709 (8th Cir. 2007)). Moreover, if a doctor evaluates a patient as having more physical limitations than the patient exhibits in daily living, an ALJ need not ignore the inconsistency. *Id*.

While the record contains evidence of multiple medical visits, most occurred prior to the date Morris asserts his disability began. The only instance—either before or after the date his disability began—where Morris complained of back or hip pain is the appointment with Dr. Holder. For example, at an appointment on May 22, 2021, Morris sought care for "cough, congestion, and right ear discomfort." (Tr. at 515). He only complained of "minor [musculoskeletal] aches and pain," was "able to stand without difficulty," and had "normal gait." (Tr. at 516). Similar appointments throughout 2021 and 2022 all involved cough, congestion, and flu-like symptoms, and Morris does not complain of back or hip pain in any of those examinations. (Tr. at 581–582, 619–629). While there were x-rays indicating spinal abnormalities (stable remote compression fractures and degenerative disc disease of the lumbar spine), Morris presented no evidence that he ever sought treatment for pain caused by those conditions. There are no notes in the medical appointments he did have that he was in pain or having trouble standing, walking, or sitting. Both Dr. Hitchens and Dr. Bates noted that Dr. Holder's uniquely situated opinion relied mostly on Morris's self-reported symptoms and was not in line with the objective medical findings. In this case, there is simply a lack of evidence to support the limitations described by Dr. Holder. Rather, the record as a whole supports the ALJ's decision to disregard Dr. Holder's opinion as an outlier.

For those reasons, Morris's argument that the ALJ committed legal error by failing to address the "supportability" and "consistency" factors when evaluating Dr. Holder's medical opinion and failed to explain how Dr. Holder's opinion was inconsistent with other evidence is unavailing. Even if that were true, however, any error related to a failure to

8

address both supportability and consistency is harmless in light of Morris's failure to produce evidence of his disability.[4] *See Austin v. Kijakazi*, 52 F.4th 723, 729 (8th Cir. 2022) (citing *Grindley v. Kijakazi*, 9 F.4th 622, 630 (8th Cir. 2021) (finding harmless error when "case was not a close call")); *see also Lucus v. Saul*, 960 F.3d 1066, 1069-70 (8th Cir. 2020) (finding ALJ's legal error was not harmless error).

    2.    <u>Severe Impairment</u>

Morris contends that the ALJ erred in not classifying his depressive disorder as a severe impairment. (Doc. 9 at 25–26). Morris maintains that his depression, while not necessarily disabling by itself, had more than a minimal effect on his ability to work. *Id*. at 26.

To warrant being considered a severe impairment, the Act requires that the impairment significantly limit an individual's physical or mental ability to perform basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920c, 404.1522(a)–(b), 416.922. An impairment is not severe if it is a slight abnormality or combination of slight abnormalities that have no more than a minimal effect on the ability to do basic work activities. 20 C.F.R. §§ 404.1522(a), 416.922. The claimant bears the burden of proving the severity of an impairment or combination of impairments. *Kirby v. Astrue*, 500 F.3d 705, 708 (8th Cir. 2007) (noting that although the requirement is not "onerous," it is not a "toothless standard") (citations omitted).

---

[4] An error is considered harmless if there is "no indication that the ALJ would have decided it differently if the error had not occurred." *Grindley v. Kijakazi*, 9 F.4th 622, 629 (8th Cir. 2021) (quoting *Van Vickle v. Astrue*, 539 F.3d 825, 830 (8th Cir. 2008)).

In this case, the ALJ found four severe impairments—COPD, spinal compression fractures, obesity, and degenerative disc disease of the lumbar spine. (Tr. at 12). At step two, the ALJ performed a detailed analysis explaining why Morris's depression did not cause more than minimal limitations on his ability to perform basic mental work activities. (Tr. at 13–14). Although Morris had been treated for depression in years prior, the ALJ noted that the record contained no evidence of ongoing treatment for mental impairment since the date of disability. (Tr. at 13). The ALJ referred to treatment notes in May 2021, explaining there was "no evidence of anxiety or depression on today's exam." *Id*. Follow-up examinations in June, July, and September 2022 noted no problems with Morris's behavior or any complaints of depressive symptoms. *Id*. Two consulting medical professionals, Dr. Santulli and Dr. Stephens, found Morris did not have any limitations due to mental impairment. (Tr. 61, 79).

Significantly, the ALJ made note that his RFC assessment "reflects the degree of limitation" the ALJ found in his step two analysis. (Tr. at 14). This is critical because, once the ALJ identifies a severe impairment and proceeds past step two, the labeling of an impairment as severe or non-severe has no legal significance; the medical record as a whole provides the basis for the determinations at steps three and four. *See* 20 C.F.R. §§ 404.1545(e), 416.945; Social Security Ruling ("SSR") 96-8p (the ALJ will consider all medically determinable impairments, even those that are non-severe, when assessing residual functional capacity). In this case, the ALJ identified at least one severe impairment and proceeded to the RFC analysis wherein the ALJ considered Morris's depression, along

10

with his other medically determinable impairments. (Tr. at 15–17). As a result, there is no error.

### 3. RFC

Morris next argues that the ALJ failed to identify evidence in the record establishing that Morris had the capacity for light work, that the RFC finding is inconsistent with Dr. Holder's opinion, and that the ALJ failed to consider Morris's depression when determining his RFC. (Doc. 9 at 26–29).

A claimant bears the burden of establishing his RFC, which is "the most [he] can still do despite [his] limitations." *Despain v. Berryhill*, 926 F.3d 1024, 1027 (8th Cir. 2019); 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). An ALJ must review all the relevant medical and other evidence in the case record when determining a claimant's RFC, and an ALJ is not required to include limitations that are not supported by the evidence in the record. *McGeorge v. Barnhart*, 321 F.3d 766, 769 (8th Cir. 2003); 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). "The mere fact that some evidence may support a conclusion opposite" to the ALJ does not allow for reversal. *Johnson v. Barnhart*, 390 F.3d 1067, 1070 (8th Cir. 2004) (citing *Gaddis v. Chater,* 76 F.3d 893, 895 (8th Cir. 1996)).

Ultimately, the RFC finding "is a decision reserved to the agency such that it is neither delegated to medical professionals nor determined exclusively based on the contents of medical records." *Noerper v. Saul*, 964 F.3d 738, 744 (8th Cir. 2020). In this case, the ALJ found that Morris had the RFC to perform light work but could not constantly stoop and had to avoid pulmonary irritants. (Tr. at 15). "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to

10 pounds." 20 C.F.R. §§ 404.1567(b), 416.967(b). Light work "requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." *Id*.

Morris testified at the hearing that his hip has "always felt out of place" following a 2018 car accident. (Tr. at 40–41). He went back to work shortly after the accident in poultry processing. (Tr. at 41, 308–310). He asserted that he has pain in his right side below the ribcage like a "hot piece of metal." (Tr. at 41). He testified that the pain starts when standing within ten to fifteen minutes when he is not wearing his back brace. (Tr. at 42). The back brace affords him another ten minutes before the pain hits the "light hot stage," and he must sit down. *Id*. Morris stated that he can walk approximately fifteen to twenty feet before his hip begins to aggravate his back or vice versa. *Id*. He testified that he could go shopping because the shopping cart helps relieve the pressure. (Tr. at 43). As for sitting, he stated he could do so about thirty minutes before he would need to move. (Tr. at 44). He also stated that he could pick up thirty to forty pounds but not regularly. *Id*. When asked about treatment for his pain, he testified that he takes "a couple of Tylenol in the morning," maybe another dose in the afternoon and before bed, and that he uses medical marijuana to treat his pain. *Id*. He stated he also uses marijuana for his depression and was not seeing a counselor. (Tr. at 44–45).

Regarding his respiratory issues, Morris stated that he was prone to bronchitis and pneumonia. (Tr. at 46). He stated that he was on a low-dose inhaler twice a day and a daily nebulizer treatment. (Tr. at 47–48). He admitted he smoked two packs of cigarettes a day despite medical advice to quit, claiming that he did not want to give up smoking because

it helped him deal with his father's cancer. (Tr. at 48). As for household chores, he stated that he can no longer mow due to the aggravation to his breathing, but he stated that he washes dishes, sweeps floors, and shops for groceries, often carrying them inside. (Tr. at 50–51). Morris said that he had problems stooping to do laundry and putting on socks and shoes. (Tr. at 50–51).

Throughout the relevant period, Morris sought medical treatment for acute respiratory issues, including bronchitis, pneumonia, asthma, sore throat, ear pain, shortness of breath, congestion, and cough. The ALJ took those matters into consideration when carving out the limitation that Morris could do light work with the restriction that he must avoid concentrated exposure to pulmonary irritants. (Tr. at 15). The ALJ found that the record did not demonstrate any limitations contributable to Morris's obesity (he was 5"10" and 243 pounds); he could perform routine movement or physical activity associated with the work environment. (Tr. at 16). Although it was Morris's obligation to prove his RFC, the record is devoid of evidence that he sought treatment consistent with his claims of disabling pain. At most, the record shows that he used conservative, over-the-counter medications and medical marijuana to treat pain. The need for only conservative treatment contradicts allegations of disabling conditions. *Smith v. Shalala*, 987 F.2d 1371, 1374 (8th Cir. 1993).

The ALJ had the benefit of several doctors' opinions on Morris's mental and physical functioning. The ALJ found Dr. Holder's opinion to be unpersuasive as an outlier, but the ALJ found the opinions of the consulting doctors generally persuasive, as they were supported by the medical evidence and consistent with the record as a whole. (Tr. at 17).

Dr. Hitchens and Dr. Bates found Morris capable of light work, and the ALJ went further by adding the limitation that Morris could not constantly stoop and had to avoid concentrated exposure to pulmonary irritants. Despite Morris's contention otherwise, the ALJ specifically considered Morris's depression when determining his RFC. Under these circumstances, substantial evidence supports the ALJ's RFC determination.

    4.    <u>Subjective Complaints</u>

Finally, with regard to the ALJ's credibility/consistency analysis, Morris asserts that the ALJ focused improperly on Morris's smoking, daily activities, and use of marijuana and over-the-counter remedies for pain management, failing to mention his work history, which he asserts supports his credibility. (Doc. 9 at 29–30).

When evaluating a claimant's subjective complaints of pain, the ALJ must consider objective medical evidence, the claimant's work history, and other evidence relating to (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; and (5) the claimant's functional restrictions. *Schwandt v. Berryhill*, 926 F.3d 1004, 1012 (8th Cir. 2019); *see also Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984); SSR 16-3p (codifying *Polaski* factors). An ALJ need not explicitly discuss each factor. *Buckner v. Astrue*, 646 F.3d 549, 558 (8th Cir. 2011) (citing *Goff v. Barnhart,* 421 F.3d 785, 791 (8th Cir. 2005)). "[T]he duty of the court is to ascertain whether the ALJ considered all of the evidence relevant to the claimant's complaints of pain . . . and whether the evidence so contradicts the claimant's subjective complaints that the ALJ could discount his or her testimony as not credible." *Masterson v. Barnhart*, 363 F.3d 731, 738–

39 (8th Cir. 2004) (citing *Benskin v. Bowen,* 830 F.2d 878, 882 (8th Cir. 1987)). Where an ALJ considers the relevant factors and then discredits a claimant's complaints for good reason, the decision should be upheld. *Hogan v. Apfel*, 239 F.3d 958, 962 (8th Cir. 2001).

Here, the ALJ "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence" as required by law, including SSR 16-3p. (Tr. at 15). The ALJ then conducted a thorough review of the record and pointed out inconsistencies with Morris's claims of disabling pain. The ALJ cited specifically to Morris's daily activities, his conservative medications and treatment, his lack of functional restrictions, and the absence of objective medical evidence to support his complaints. The fact that the ALJ did not explicitly discuss Morris's work history is not fatal to the analysis where the ALJ acknowledged and considered appropriate factors before discounting Morris's subjective complaints. *See Goff v. Barnhart*, 421 F.3d 785, 791 (8th Cir. 2005); *see also Roberson v. Astrue*, 481 F.3d 1020, 1025–26 (8th Cir. 2007). Moreover, the ALJ was clearly aware of Morris's work history, having asked about it during the hearing and reviewed it as part of the record. (Tr. at 40–41, 52–53, 308–315). In this case, the administrative record supports the ALJ's decision.

### III. CONCLUSION

For the reasons stated herein, the Court finds that substantial evidence on the record as a whole supports the ALJ's decision, and the ALJ applied proper legal standards.

IT IS THEREFORE ORDERED THAT:

1. The decision of the Commissioner that Morris is not disabled within the meaning of the Act is hereby AFFIRMED.

2.   Judgment will be entered for the Defendant.

SO ORDERED this 22nd day of August, 2024.

*Benecia Moore*
_____
UNITED STATES MAGISTRATE JUDGE